21 N.J. Super. 511 (1952)
91 A.2d 421
ARTHUR C. GILLETTE, PLAINTIFF-APPELLANT,
v.
MARY L. CASHION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1952.
Decided October 1, 1952.
*512 Before Judges McGEEHAN, BIGELOW and SMALLEY.
Mr. Milton M. Unger argued the cause for the appellant (Messrs. Milton M. and Adrian M. Unger, attorneys).
Mr. Ira C. Moore, Jr., argued the cause for the respondent (Mr. Reynier J. Wortendyke, Jr., attorney).
The opinion of the court was delivered by SMALLEY, J.S.C.
This is an appeal by the plaintiff taken from a judgment entered for the defendant in the Chancery Division of the Superior Court, Essex County, *513 wherein plaintiff sought specific performance and, in the alternative, damages.
On January 16, 1951 the plaintiff, as vendee, and the defendant, as vendor, entered into a "short form" agreement for the sale of the latter's house in Short Hills to the plaintiff for the sum of $19,000. The agreement was dated January 14, 1951 but was signed January 16, 1951. The transaction was brought about by the brokerage firm of Martin & Weis, Inc., who acted for the defendant in the matter. The agreement called for a $500 deposit and a further $1,400 payment upon "execution of formal contract January 18, 1951."
Donald A. Martin of the brokerage firm testified that in the evening of the same day that the "short form" agreement was signed, he received a telephone call from the defendant informing him that she was regretful and distressed about having signed the agreement. Her main concern was in finding new living quarters whenever the house should be sold. On the next day, January 17, 1951, Martin telephoned the plaintiff and told him of the defendant's change of position. Martin told the plaintiff of Mrs. Cashion's heart condition and stated that he didn't want it on his conscience should this transaction affect the defendant's physical condition.
As a result of this conversation Martin received the following letter from the plaintiff.
 "ARTHUR C. GILLETTE
 Counsellor at Law
 3700 Raymond-Commerce Building
 Newark 2, New Jersey
 Mitchell 3-1123
 January 17, 1951
 Martin & Weis, Inc.,
 151 Maplewood Avenue
 Maplewood, New Jersey
 Attention Mr. Donald Martin and Mrs. Florence Macrae
Dear Mrs. Macrae and Mr. Martin:
In my various telephone conversations with each of you today, you have advised me that your client Mrs. Mary L. Cashion of 52 Hobart Avenue, Short Hills, New Jersey, indicated to you this morning *514 that she desires to be released from the contract which she signed in the presence of both you and myself at her home last evening, under the terms of which she has agreed to sell to me the property in which she is residing, being a one-family house situate on a lot approximately 60' x 100' and known as 52 Hobart Avenue, Short Hills, New Jersey. This contract, I had executed on January 14, 1951, at which time I tendered to you my check for $500.00, which check you delivered in my presence to Mrs. Cashion yesterday when she signed the original and two copies of the contract previously executed by me.
You tell me that Mrs. Cashion has not been well and that presumably her present upset is because she has not yet located a place to which she can move.
This is to advise you that since Mrs. Cashion and I have entered into a mutually legally binding contract, that I shall be prepared in accordance with the terms of that contract, to enter into a formal contract tomorrow and to tender to Mrs. Cashion or her representative, the payment of $1400 in cash, all as provided in the contract.
I am writing this letter in pursuance of my legal obligation under the existing contract and so that there will be no question of my being in default under that contract, and so that my rights under the contract to purchase the property shall be legally enforceable should Mrs. Cashion die, since you advise me she may be critically ill.
However, as I have told you both on the telephone, I am perfectly willing under the circumstances to release Mrs. Cashion if she prefers not to go through with the contract upon the return to me of my deposit check of $500.00 and the two copies of the contract which I have executed.
I think I have made it completely clear to you that I do not want to exert any pressure in Mrs. Cashion's state of health to compel her to go through with the contract, since it appears that that may adversely affect her health. On the other hand, I do not want to be found in default under the contract myself, and, if she should die I want to protect my legal rights to acquire the property.
 Yours very truly,
 Arthur C. Gillette
 acg:bch"
There is some dispute in the testimony as to whether Martin requested the letter of January 17 from the plaintiff for the express purpose of calming down the defendant pending the search for an apartment, or whether the plaintiff sent the letter of his own accord, in the absence of any such request. Be that as it may, the letter was produced at the trial, admitted into evidence, is a part of the record and now speaks for itself.
*515 On January 18, 1951, the plaintiff met with Mrs. Macrae, another member of the brokerage firm, and the "formal contract" was signed by him on that date. This agreement contained three clauses which were not included in the "short form" agreement of January 14. The defendant never signed the agreement of January 18, 1951.
On or about the same date, Martin procured the original and copy of the "short form" contract, and sent them, together with the $500 deposit check, to the plaintiff who accepted them without objection.
On January 26, 1951, a new contract was prepared which provided for the $500 deposit, an additional payment of $1,400 on February 1, and the remainder on April 1, 1951, the date of the closing. The plaintiff also signed this contract but Mrs. Cashion refused to sign this third agreement. Thereupon plaintiff brought suit for specific performance of the original agreement of January 14, 1951 and in the alternative he sued for damages.
The lower court found that the original contract had been effectively terminated and ordered a dismissal of the complaint.
The appellant urges as grounds for his appeal, the following contentions: (1) the contract of January 14, 1951, was never rescinded, and (2) if said contract was rescinded, it was subsequently revived.
The facts clearly indicate that the parties intended to be bound on the signing of the "short form" agreement. It seems improbable that Mrs. Cashion would have called Martin and told him of her distress and regret over the signing of this agreement had she not considered herself bound. Likewise the plaintiff admitted in his letter of January 17 that he was bound when he said: "This is to advise you that since Mrs. Cashion and I have entered into a mutually legally binding agreement * * *." It is quite evident from the stated facts that the "short form" agreement was in itself a legally binding contract.
*516 1. The "short form" contract of January 14, 1951 was effectively rescinded. In the absence of some vested derivative interest in another, a contract may be modified, abrogated, or rescinded by the mutual assent of the contracting parties. Schlossbach v. Francis-Smith, 3 N.J. Super. 368 (Ch. Div. 1949).
Mrs. Cashion's willingness to be released from the agreement of January 14, 1951 is evidenced by the proofs relating to her communication with Martin whereby she stated that she was distressed and regretful about signing the contract and would like to be relieved. The letter of January 17, 1951 is indicative and practically dispositive of plaintiff's intention to terminate the agreement.
Appellant argues that the letter at most is only an offer to give a release in futuro because the language is couched in that fashion. Assuming that this contention is correct, we find that the agreement was effectively rescinded when the check and contract was returned to plaintiff as requested in the so-called "offer of release," which was then "accepted."
2. The rescinded contract was never revived.
"After rescission a contract may be renewed by express agreement or by acts evidencing such an intention * * *." 17 C.J.S., Contracts, § 440.
Appellant contends that the conduct of both parties subsequent to the letter of January 17 evidenced an intention to revive the rescinded contract. This is an erroneous contention. It is fundamental that if a contract is to be revived, it must be reinstated in exactly the same terms as were present before it was voided. In this case the conduct of all parties was inconsistent with an intention of revival of the January 14 agreement. The contracts which were attempted to be negotiated by the plaintiff were substantially dissimilar to the original agreement in that they incorporated certain provisions (e.g., covenant to repair roof, covenant to remove tree stump, time of the essence clause), which were not contained in the original agreement of January 14, 1951.
*517 We find no revival here, but an attempt to enter into a new agreement containing different terms, which agreement the defendant refused to accept.
Since we find that there was no legally binding contract in existence at the time of the alleged breach, an action for specific performance or damages based on such non-existent agreement cannot be maintained.
Accordingly we affirm the judgment of dismissal.