

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-21-2007

# Laplace v. Laplace

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1317

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Laplace v. Laplace" (2007). *2007 Decisions*. Paper 1446.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1446

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-1317

DOROTHY POPLAR LAPLACE; LISA J. LAPLACE SMITH,
As Co-Executrixes of the Estate of Maurice Leonard Laplace
and on behalf of J. & M. LAPLACE, New Jersey General Partnership,

Appellants
v.

SANIEL LAPLACE

On Appeal from the District Court
for the District of New Jersey
(D.C. No. 03-cv-04291)
District Judge:   Hon. Joseph A. Greenaway, Jr.

Submitted under Third Circuit LAR 34.1(a)
on December 13, 2006

Before: SMITH and ROTH, <u>Circuit Judges</u>
YOHN*, <u>District Judge</u>

(Filed:    March 21, 2007)

**OPINION**

*The Honorable William H. Yohn, Jr., Senior United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

**ROTH,** <u>Circuit Judge</u>

This is a contract interpretation case. Maurice Laplace and Saniel Laplace were brothers and partners of L.J.&M. Laplace (LJM), a New Jersey partnership. After Maurice's death, his wife Dorothy and daughter, Lisa Smith, initiated this lawsuit against Saniel, the sole remaining partner of LJM, seeking Maurice's "fair" share of the partnership. Maurice's heirs brought a declaratory judgment action to invalidate the buyout provision in the controlling partnership agreement. They also claim that the LJM partners' course of conduct either modified or abandoned the buyout provision. The parties filed cross-motions for summary judgment in the District Court. Finding no factual dispute, the Court interpreted the partnership agreement under New Jersey law and ruled in favor of Saniel. Dorothy LaPlace and Lisa Smith's timely appeal followed.

Because New Jersey's partnership statute does not supercede the buyout provision of the LJM partnership agreement and because the partners' conduct actually ratified, rather than modified or abandoned, the buyout provision, we will affirm the District Court's order granting summary judgment to Saniel.

## I. **BACKGROUND**

LJM was founded by brothers Oscar and Louis Laplace in the 1930s. Louis's three sons – Maurice, Saniel, and Oscar B. Laplace – were also partners of the business. In 1959, the five partners executed a partnership agreement that set forth the terms by which LJM would operate thereafter. Paragraph 11 of the agreement provided that, upon the death of a

partner, the remaining partners would buy out the deceased partner's interest for $100,000, less any negative amount in that partner's capital account. Paragraph 11(g) provided that the $100,000 buyout figure could be amended in writing. Paragraph 12 provided a similar buyout provision in the case of a partner's retirement. Paragraph 14 stated that the partnership agreement could be modified only by written instrument.

With the exception of Maurice, the $100,000 buyout figure was amended each time a partner retired or died. Louis died in 1960. His estate received more than $100,000, but there is no written record of this amendment. In 1967, Oscar retired and died a year later. Prior to his retirement, the partners executed a written amendment providing for a $139,000 buyout, plus an additional sum to cover certain taxes. In 1982, when Saniel was hospitalized for heart bypass surgery, the parties executed a temporary written amendment providing for a $225,000 buyout in the event of Saniel's death. Because Saniel did not die within the 45-day time period set forth in the amendment, the buyout amount reverted to $100,000 as set forth in the 1959 agreement. In 1984, a nearly identical amendment was executed for Oscar B. when he had serious health problems. This amendment also expired after Oscar B. lived beyond the 45-day time period. In 1986, Oscar B. died, leaving Maurice and Saniel as the remaining LJM partners. Four years later, LJM executed a written amendment with Oscar B.'s estate in order to provide it with a $230,000 buyout. In 2003, Maurice died. An amendment to the 1959 buyout provision was never executed for him.

The buyout amount owed to Maurice's estate is the subject of the instant litigation. His heirs allege that they are entitled to far more than then the $100,000 provided for in the

3

1959 agreement, as Maurice's 50 percent stake in LJM allegedly exceeds $100,000 by a significant amount. Saniel disagreed, as did the District Court.

The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. Maurice's heirs are citizens of New Jersey and Saniel was a citizen of Iowa. Maurice's heirs assert they are entitled to Maurice's 50 percent stake in LJM. The amount in dispute exceeds $75,000. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## II. DISCUSSION

Saniel died in September 2006, after the District Court granted summary judgment in his favor. As a preliminary matter, we must address the effect of Saniel's death on the instant appeal. Saniel's children, Michael and Joan Laplace, have filed a motion for substitution of party pursuant to Fed. R. App. P. 43(a) in which they seek to replace their father as appellee in this case. Appellants do not oppose the motion, provided that the substituted party is captioned "the Estate of Saniel Laplace, by its co-executors, Michael and Joan Laplace." However, when the Rule 43(a) motion was filed, there was a dispute in Iowa probate court between Michael and Joan, who each claimed to be the rightful executor of their father's estate to the exclusion of the other. On November 9, 2006, the Iowa court issued an order appointing Michael and Joan as co-executors of Saniel's estate. However, the court also noted that the ongoing dispute between Michael and Joan might later necessitate the appointment of a corporate fiduciary, Bank of America, as executor, which would complicate the Rule 43(a) motion before us.

To resolve this issue, we take judicial notice that, on January 19, 2007, the Iowa court

4

issued an order (according to the state court docket) stating: "Co-executors no longer believe the services of an institutional fiduciary is absolutely required–request to be relieved of the obligation to consult further with Bank of America is approved." As this order evidently resolves the dispute between Michael and Joan, we will grant their Rule 43(a) motion and direct the clerk to substitute "the Estate of Saniel Laplace, by its co-executors, Michael and Joan Laplace" for Saniel as appellee in this case.

Moving to the merits, we address Appellants' statutory and course of conduct arguments. We undertake plenary review of the District Court's grant of summary judgment to Saniel. NL Indus., Inc. v. Commercial Union Ins. Co., 65 F.3d 314, 319 (3d Cir. 1995).

## A. New Jersey Revised Uniform Partnership Act

In 2000, New Jersey adopted the Revised Uniform Partnership Act (RUPA), N.J.S.A. 42:1A-1 et seq., and both parties agree that RUPA applies to the 1959 LJM partnership agreement. Generally speaking, RUPA is a gap-filler statute meant to apply where partnership agreements are silent. For example, § 4a states: "Except as otherwise provided in subsection b. of this section, relations among the partners and between the partners and the partnership are governed by the partnership agreement. To the extent the partnership agreement does not otherwise provide, this act governs relations among the partners and between the partners and the partnership." N.J.S.A. 42:1A-4a. The exceptions in subsection b. do not apply in the instant case.

Although it is clear that RUPA sets forth default rules that are not intended to supercede the express terms of a partnership agreement (exception in certain instances not

5

relevant here), Appellants make the purely legal argument that Section 34's "fair value provision" does just that – requires that a buyout be at a "fair" value – thus rendering invalid the $100,000 buyout provision in the LJM partnership agreement.  Section 34 of RUPA states:

> a.  If a partner is dissociated from a partnership . . . , except as otherwise provided in the partnership agreement, the partnership shall cause the dissociated partner's interest in the partnership to be purchased for a buyout price as determined pursuant to subsection b. of this section.

> b.  As used in subsection a. of this section, "buyout price" means the fair value as of the date of withdrawal based upon the right to share in distributions from the partnership unless the partnership agreement provides for another fair value formula .

N.J.S.A. 42:1A-34.  Appellants argue that the phrase "another fair value formula" in § 34b demonstrates that RUPA requires all buyout provisions, including express ones in a partnership agreement, to be based on some sort of fair value formula (which Appellants argue a fixed sum is not), whether it be the formula set forth in § 34b (i.e. "fair value as of the date of withdrawal based upon the right to share in distributions from the partnership") or another fair value formula set forth in the partnership agreement.  Appellants argue that interpreting § 34b to apply only when the partnership agreement is silent regarding buyout price renders § 34b's phrase "another fair value formula" meaningless.

We reject this argument for two reasons.  First, Appellants ignore the clear disclaimer in § 34a – "except as otherwise provided in the partnership agreement" – which reinforces the gap-filler nature of RUPA as set forth in § 4a.  Second, Appellants ignore the fact that buyout provisions may be triggered for many different reasons, including a partner's death, retirement, or disassociation for some other reason.  For example, a partnership agreement

may be silent regarding the buyout price for a partner who has died, but the agreement may nevertheless set forth a fair value formula for determining the buyout price for a partner who voluntary disassociated for some other reason, such as retirement. Under such an agreement, if a partner died, § 34b would apply, but that section might permit application of the fair value formula for the buyout of a retiring partner in order to determine the dead partner's buyout price. Such an example illustrates how § 34a and b of RUPA can be read together, in accordance with the plain language of the statute, without rendering any of the statutory language meaningless. We therefore agree with the District Court that RUPA does not render the $100,000 buyout provision of the LJM partnership agreement invalid.

## B. Course of Conduct

As an alternate to their purely legal argument described above, Appellants make the fact-based argument that the LJM partners' course of conduct over the past 45 years demonstrates that none of the partners ever intended to be bound by the $100,000 buyout provision in the 1959 agreement. Despite the factual nature of this argument, there is no dispute of fact precluding summary judgment on this point. The parties agree to the events at issue notwithstanding the very different legal significance they attribute to them.

Appellants argue that each of the amendments made to the 1959 agreement – in 1960, 1967, 1982, 1984 and 1990, as described above – demonstrate either a modification or a waiver of the $100,000 buyout price set forth in ¶ 11 of the agreement. Paragraph 11(g) permits the partners to periodically adjust the $100,000 buyout price "by affixing to this [1959] agreement an instrument in writing, in a form as indicated at the end of this

7

subdivision, which shall be signed by all parties." Paragraph 11(g) further states that the buyout price "so fixed in the last amendment preceding the death of any of the parties hereto shall be controlling and binding upon the parties hereto, their heirs, executors and administrators." Appellants point out that each of the amendments to the buyout price failed to conform with these precise requirements, which Appellants argue is clear evidence of the partners' disavowal of ¶ 11 (and ¶ 12) of the 1959 agreement. Specifically, Appellants point out that the amendments failed to conform with ¶ 11(g) in the following ways: (1) the 1960 amendment was not in writing, (2) the 1967 written amendment was not in the form contemplated by ¶ 11(g) and was applicable only to Oscar, (3) the 1982 written amendment was temporary and was not in the form contemplated by ¶ 11(g) or affixed to the 1959 agreement, (4) the 1984 written amendment suffered the same infirmities as the 1982 amendment, and (5) the 1990 amendment was executed after Oscar B.'s death, Saniel failed to sign it, it was not in the form contemplated by ¶ 11(g), it applied only to Oscar B., and it was not affixed to the 1959 agreement.

Appellee does not disagree that these written amendments failed to conform with all of the requirements in ¶ 11(g). Rather, Appellee argues that the amendments conformed in material part, and that any discrepancies fail to give rise to the conclusion that the partners intentionally and clearly disavowed ¶ 11. We agree with Appellee. Under New Jersey law, the clear language of a contract may be modified by the conduct of the parties "as long as the intention to modify is mutual and clear." DeAngelis v. Rose, 320 N.J. Super. 263, 280 (App. Div. 1999).

8

On the facts before us, it is not clear that the partners mutually agreed to modify the terms of ¶ 11. Four of the 5 amendments were in writing, in accordance with ¶ 11(g) (and ¶ 14), and at least 3 of the 5 amendments were signed by all partners involved, as required by ¶ 11(g). (Furthermore, it is undisputed that Saniel knew about and abided by the 1990 amendment despite having failed to sign it.) The partners' failure to use the precise form language set forth in ¶ 11(g) is not material in light of the substantive similarity between the form language and the amendment language that was actually used. Likewise, the failure to affix the amendments to the 1959 agreement is insignificant in light of the undisputed fact that each LJM partner clearly knew about, agreed to, and abided by every amendment to which he was a party. With regard to the amendments that expired after 45 days or amended a partner's buyout price after his death, it is not clear that the 1959 contract prohibits such agreements, provided they are in writing as required by ¶ 14. Finally, while the partners departed from ¶ 11 by applying amendments to individual partners rather than all partners, this non-conformity, even when considered alongside all the others, is not enough to overcome the primary importance of the express terms of the 1959 agreement providing for a $100,000 buyout upon a partner's death. In fact, as each of the 4 written amendments explicitly referred to the 1959 partnership agreement, these amendments actually ratified that contract's ongoing validity.

We agree with the District Court's conclusion that the 5 amendments to the $100,000 buyout provision did not render ¶ 11 of the 1959 agreement modified or waived. We further agree that the doctrine of equitable estoppel should not bar application of ¶ 11 as Maurice

9

was not misled into believing that the $100,000 buyout provision had been altered or abandoned. As a signatory to each written amendment described above, Maurice was well aware of the ongoing validity of the 1959 agreement and the method by which to modify the $100,000 buyout provision.

## III. CONCLUSION

For the foregoing reasons, we will grant Appellee's motion for substitution of party and direct the clerk to replace Saniel Laplace with "the Estate of Saniel Laplace, by its co-executors, Michael and Joan Laplace, and we will affirm the District Court's order granting summary judgment for Defendant.