**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2148
_____

BARRY COHEN,

Appellant

v.

JEFF J. HORN; THE HORN LAW GROUP, LLC

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3-19-cv-05604)
Chief District Judge:  Honorable Freda L. Wolfson

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 6, 2022

Before:  AMBRO, KRAUSE, and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed December 9, 2022)

_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appellant Barry Cohen ("Cohen") appeals from an order of the District Court granting summary judgment in favor of defendants, Jeff Horn, Esq., and the Horn LaGroup, LLC ("HLG"). For the following reasons, we will affirm.

As the parties are familiar with the facts and the procedural history of this case, we recite them only as necessary to explain our decision. Cohen hired defendants to represent him in a dispute with his mother, Selma Cohen, over the administration of his father's estate. In June 2016, Horn filed a Verified Complaint against Selma in the Ocean County Surrogate's Court ("probate court"), New Jersey, alleging that she failed to follow the terms of Harry Cohen's 1999 will.[1] Horn also filed a Show Cause order seeking, inter alia, an accounting of the Estate's assets, removal of Selma as Executrix, appointment of Cohen as Executer, and reimbursement of funds by Selma to the trust. In August 2016, Selma's counsel, Christopher Olszak, Esq., sent Horn a copy of a 2009 will, executed by Harry Cohen, which left everything to Selma. Olszak filed an answer to the complaint and a counterclaim seeking to remove the 1999 will and admit the 2009 will for probate.

Pursuant to a "game plan" that he and Cohen devised,[2] Horn filed a response to the counterclaim and a certification executed by Cohen which included statements

---

[1] Under the 1999 will, Harry Cohen's assets were placed in a trust for Selma; she would receive income and distributions from a trust and, upon her death, Cohen and his sister, Helene, would receive $200,000 plus half the balance of the principal of the trust. Harry Cohen died in March 2011, and Helene passed away two months later. In July 2011, Selma filed the 1999 will for probate.

[2] In a letter to Cohen, Horn confirmed that the "game plan" was to give Olszak "the impression that [Cohen was] willing to go the distance," and then settle the matter

questioning the legitimacy of the 2009 will, including that his father "suffered significant age-related mental issues."  The probate court entered a case management order.  In a telephone conference with Horn in September 2016, Cohen and his wife directed Horn to "go forward full throttle" to obtain the Estate's accounting, to serve interrogatories and subpoenas, and to request a file from Adult Protective Social Services to demonstrate to Olszak that Harry suffered from "mentally limiting disorders" and lacked the capacity to enter into the 2009 will.  ECF No. 38-23.  The expectation was that Selma would capitulate to the terms of the 1999 will and withdraw as Executor.  See id.

Selma did not capitulate.  See ECF Nos. 1 at 23 (noting numerous objections to Cohen's response to Selma's Notice to Produce and Interrogatories); 38-28 at 22 (Horn email to Cohen noting that Selma's answers to interrogatories "are once again over-due"); 38-26 at 2 (Horn letter to Cohen noting that "[t]he answers to interrogatories received from Selma's counsel were deficient in numerous areas").  In December 2016, Horn issued a subpoena to Virginia Muscarella of Senior Services of Manchester Township, requiring her to appear for a deposition and to produce Harry and Selma's records.  Olszak filed a motion to quash the subpoena.  After that point, the relationship between Cohen and defendants broke down.  The probate court granted Horn's motion to be relieved as counsel in February 2017, and, three months later, it admitted the 2009 will and vacated the admittance of the 1999 will.

---

conceding to admission of the 2009 will superseding the 1999 will and "collecting maximum reimbursement for your legal fees expended to date."  ECF No. 38-21 at 2.

3

Cohen filed a complaint against defendants in state court alleging, inter alia, that the defendants "were negligent and/or committed legal malpractice and breached the contract created by the Engagement Letter fiduciary duties" through certain acts and omissions in the probate court litigation. ECF No. 1 at 8 ¶6. Defendants removed the matter to the District Court pursuant to 28 U.S.C. §§ 1332, 1441.

This is the second time this case is before us. The first time, we affirmed the District Court's order granting summary judgment in favor of defendants on Cohen's legal malpractice claim to the extent he sought to establish proximate causation of actual damages by proving the "suit within the suit."[3] See Cohen v. Horn, No. 21-1223, 2021 WL 2935029, at *3 (3d Cir. 2021). We agreed with the District Court that Cohen failed to prove that he would have prevailed in the probate action but for defendants' alleged conduct. We affirmed in part and vacated in part the District Court's judgment; we remanded for the District Court to determine whether Cohen could otherwise recover on his malpractice claim and to consider "any other actionable tort or contract claim in [Cohen's] complaint." Id.

On remand, the District Court determined that defendants had not breached a duty of care to Cohen and that, therefore, his malpractice claim failed under any viable theory of proximate causation. The District Court granted summary judgment for defendants on

---

[3] To establish a claim for legal malpractice in New Jersey, a plaintiff must establish "(1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) the breach of such duty; and (3) proximate causation." DeAngelis v. Rose, 727 A.2d 61, 67 (N.J. Super. Ct. App. Div. 1999).

4

that claim and on Cohen's claims for breach of fiduciary duty, breach of contract, negligence, and negligent supervision. Cohen appeals.

We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's decision on summary judgment, which involved the interpretation and application of New Jersey law, de novo. Dixon Ticonderoga Co. v. Estate of O'Connor, 248 F.3d 151, 161 (3d Cir. 2001). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although "[w]e view the facts and draw all reasonable inferences in the non-movant's favor," we will conclude that "[a] disputed issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Resch v. Krapf's Coaches, Inc., 785 F.3d 869, 871 n.3 (3d Cir. 2015) (citation and quotation marks omitted).

On appeal, Cohen does not challenge the District Court's determination that the defendants were not liable for malpractice because they did not breach a duty of care. Accordingly, the issue has been forfeited. See M.S. by & through Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 124 n.2 (3d Cir. 2020) (noting that arguments not raised in an opening brief on appeal are forfeited); see also Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (noting that pro se litigants "must abide by the same rules that apply to all other litigants"). In any event, we agree with the District Court that Cohen failed to meet his burden of proof.

Cohen failed to obtain an expert to explain the defendants' duty of care and how it was breached. Carbis Sales, Inc. v. Eisenberg, 935 A.2d 1236, 1244 (N.J. Super. Ct.

5

App. Div. 2007) ("As 'the duties a lawyer owes to his client are not known by the average juror,' expert testimony must necessarily set forth that duty and explain the breach.") (citation omitted).  Even assuming that this is one of the "rare" malpractice cases for which expert testimony is not required, Sommers v. McKinney, 670 A.2d 99, 104 (N.J. Super. Ct. App. Div. 1996), Cohen failed to present sufficient evidence from which a jury could conclude that defendants' conduct deviated from a professional care standard.  In particular, granting courtesy extensions of deadlines to defendants and, without more, failing to complete discovery by the state court's scheduled deadlines do not rise to the level of malpractice.  See generally Ziegelheim v. Apollo, 607 A.2d 1298, 1306 (N.J. 1992) (noting that "[t]he law demands that attorneys handle their cases with knowledge, skill, and diligence, but it does not demand that they be perfect or infallible, and it does not demand that they always secure optimum outcomes for their clients").  And, as the District Court explained, Horn did not simply fail to respond to Selma's motion to quash the subpoena; he advised Cohen of his assessment of the case at that point – that the costs of responding to the motion and pursuing the next phase of the litigation could exceed the potential financial recovery.[4]  Cohen failed to demonstrate that

_____

[4] As Cohen explained to Horn,

> [w]e built rapport at the beginning of the matter when I urged a step-by-step process involving analysis of the cost versus the likely gain at each stage.  We are about to embark upon an expensive stage of the litigation and the refusal of Selma to provide even a reasonably detained informal accounting has impaired our ability to analyze the value of the estate.  In short, I am not certain that pressing on with the litigation will produce a financial recovery that justifies the expenditure.  I know

6

he responded or otherwise indicated to Horn that he should challenge the motion to quash.[5]

Finally, Cohen failed to produce evidence from which a jury could conclude that the defendants breached their duty of care by the timing or manner of their withdrawal from representation of him. Pursuant to the New Jersey Rules of Professional Conduct (R.P.C.), "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests." N.J. R.P.C. 1:16(d); see also Gilles v. Wiley, Malehorn & Sirota, 783 A.2d 756, 760 (N.J. Super Ct. App. Div. 2001) (explaining that a violation of the R.P.C. is evidence of a "failure to comply with the required standard of care"). Cohen failed to demonstrate that the defendants' conduct had a "material adverse effect on [his] interests." Id.

As the District Court noted, on January 9, 2017, Horn corresponded with Cohen explaining that their approaches to the litigation had diverged and stating that Cohen had taken certain actions that were "incongruent with the attorney-client relationship." ECF

---

that you are a business man (sic) as am I. Before I expend time
and your money on expanding the litigation, I need your
input and to address litigation funding.

ECF No. 38-26 at 3-4.

[5] Cohen produced an email from Horn's employee which included an attached file of the "Estate of Cohen" folder. See ECF No. 18-2 at 19. Although the email includes a draft response from Cohen asking when defendants "intend to respond to the Motion to Quash," and advising that Cohen had "attorneys who are waiting for the complete file," there is no indication that the reply was sent to defendants.

No. 17-16 at 25; see also ECF No. 17-17 at 6-9. Horn requested that Cohen execute an enclosed Substitution of Attorney form and take over the representation or retain new counsel. Horn advised Cohen that if the form was not returned to him by January 16, 2017, he would file a motion to be relieved as counsel. The correspondence included a copy of the probate court's scheduling order which also indicated that no date had been set for trial. Absent a response from Cohen, see fn. 5, *infra*, Horn sent a letter on January 27, 2017, advising Cohen that a hearing on the motion to be relieved as counsel and two motions to quash was scheduled for February 6, 2017, and outlining Cohen's options. See ECF No. 17-18 at 2-3. Cohen neither responded to the letter nor appeared at the hearing, at which Horn's motion to withdraw was granted. Under these circumstances, where the record includes reasonable cause to end the attorney-client relationship, and where Cohen was made aware of Horn's intent to withdraw as counsel and that the motions to quash were pending, Cohen could not establish that the defendants committed malpractice. See Gilles, 783 A.2d at 761 (noting that "the determination of reasonableness is ordinarily circumstantially dependent").

In light of the foregoing, we can quickly dispense with Cohen's challenge to the grant of summary judgment in defendants' favor on his claims for breach of contract, breach of fiduciary duty, and negligence. Cohen based these claims on the same "acts and omissions" underlying his malpractice claim. See ECF No. 1 at 8, ¶ 6. He also framed these claims in terms of defendants' failure to act with a degree of professional care (i.e., "with the degree of competence generally possessed by attorneys and law firms"). ECF No. 1 at 8, ¶ 5, 9 ¶ 6(b); see also ECF No. 39-1 at 7 (discussing "the

8

negligent failure of the attorney to perform his or her professional obligation" and "a legal duty owed by an attorney" (quotation marks and citations omitted)), id. at 8 (arguing that defendants "did not act with a degree of skill and competence that meets reasonable professional standards"), id. at 10-12.  As pleaded, Cohen's claims for breach of contract, breach of fiduciary duty, and negligence are not distinct claims for relief but rather alternative theories in support of a malpractice claim.  See Cortez v. Gindhart, 90 A.3d 653, 664 (N.J. Super. Ct. App. Div. 2014) (noting that a claim for breach of fiduciary duty is subsumed in a malpractice claim where the "only fiduciary relationship identified is that of attorney and client" and the conduct underlying both claims is the same); see also McGrogan v. Till, 771 A.2d 1187, 1192-93 (N.J. 2001) (noting that a plaintiff may "employ an underlying theory of contract or tort in a legal-malpractice action" but such suits are "grounded in the tort of negligence").  Accordingly, defendants were entitled to summary judgment on these claims.

Based on the foregoing, we will affirm the District Court's judgment.[6]

---

[6] Cohen's "Motion to Amend Pleadings" is denied.  See Webb v. City of Philadelphia, 562 F.3d 256, 261 n.4 (3d Cir. 2009) (noting that courts of appeals generally do "not consider material [ ] that is outside of the district court record."); see also Fed. R. App. P. 10(e); Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 226 (3d Cir. 2009) (explaining the "exceptional circumstances" necessary to justify supplementing the record on appeal).  We note that the "financial accounting" documents are not necessary to decide the appeal.