Sylvia SMALL, Plaintiff,

v.

Gerson M. GOLDMAN, Ronald Goldman, Bee-Gee Realty Co., Inc., and Goldman Furniture Co., Inc., Defendants.

Civ. A. No. 85–4506.

United States District Court,
D. New Jersey.

June 23, 1986.

Riker, Danzig, Scherer, Hyland & Perretti, Morristown, N.J., for plaintiff.

Asch & Suss, Elizabeth, N.J., for defendants.

## OPINION

HAROLD A. ACKERMAN, District Judge.

This is an action between a stockholder of Bee-Gee Realty and the president and director of Bee-Gee Realty, Bee-Gee Realty, the president and director of Goldman Furniture and Goldman Furniture for alleged fraud in a lease entered into between Bee-Gee Realty and Goldman Furniture. On January 13, 1986, I dismissed Count 5 of plaintiff's complaint alleging violations of 18 U.S.C. § 1961(4) (RICO) because I found plaintiff's cause of action to be derivative of a claim properly brought only by the corporation. Plaintiff now brings this motion for reconsideration.

Plaintiff contends that she should be permitted to maintain this action because she stands in a "special relationship" with the defendant which causes her claim to be direct, rather than derivative and because New Jersey law provides a direct mechanism whereby an oppressed shareholder of a closely held corporation can institute a direct action against the corporation. Defendant contends that these special exceptions do not apply and the general rule that a stockholder cannot sue in his own name must prevail.

Once again, as this motion was originally brought as a motion to dismiss, I must accept as true the factual allegations of the complaint and may only dismiss if plaintiff can prove no set of facts which would entitle her to relief.

The unanimous view of the courts which have considered the question is that only the corporation may bring a RICO action to redress injury suffered by the corporation unless the shareholder can also show some specific direct harm to her personally. Judge Edelstein of the Southern District of New York found the reasoning persuasive in *Warren v. Manufacturers Nat'l Bank of Detroit*, 759 F.2d 542, 544–46 (6th Cir.1985), as I did in my initial ruling on this issue. In *Nordberg v. Lord, Day & Lord*, 107 F.R.D. 692 (S.D.N.Y. 1985), Judge Edelstein, in holding that the

shareholder had no standing to bring a RICO action, stated:

> "If Congress intended to abrogate the common law and create a cause of action for the individual shareholder it could have done so explicitly.... The holding in *Sedima* [*v. Impex*, —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346] ... is not inconsistent with the proposition that a shareholder must comply with the derivative action requirements of Rule 23.1 in order to redress corporate injury suffered 'by reason of' a violation of 18 U.S.C. § 1962.... Unlike the lower courts in *Sedima,* this court is not superimposing artificial constraints on the express language of Section 1964(c). By adhering to the derivative action requirement, this court is merely applying tried and true principles of shareholder standing, which Congress evinced no intent to abrogate.... Derivative action requirements ... are not inconsistent with the policies underlying RICO and Section 1964(c)."

*Nordberg* 699–700.

*See also, Dana Molded Products v. Brodner,* 58 B.R. 576 (N.D.Ill.E.D.1986, Judge Getzendanner) (judgment creditor of bankrupt corporation may not bring RICO action for bankruptcy fraud committed against corporation itself); *Rokeach v. Eisenbach,* slip op., Dec 3, 1985 (N.D.Ill.E.D., Judge Plunkett) (a RICO cause of action for diminution in value of corp. belongs to the corp., and not to individual stockholders).

As I stated in my first opinion in this case,

> "statutes are to be interpreted with references to the common law and generally to be given their common law meaning absent some indication to the contrary" *Warren v. Manufacturers Nat'l Bank of Detroit,* 759 F.2d 542, 545 (6th Cir. 1985)."

Thus, the viability of this shareholder suit must be evaluated in light of N.J. common law on this issue.

Plaintiff distinguishes the results of the other cases directly addressing the question of shareholder standing in RICO actions by directing the court's attention to N.J.S.A. 14A:12–7(1)(c). Under this statute, the "oppressed shareholder" is a litigant newly created by legislative amendment to the New Jersey Corporation Act. *See Exadaktilos v. Cinnaminson Realty Co.,* 167 N.J.Super. 141, 400 A.2d 554 (Law Div.1979). As the comments to the statute explain, this statute was amended in 1973 to permit an action

> "in the case of a corporation having 25 or fewer shareholders if those in control have acted fraudulently or illegally, been guilty of mismanagement or abuse of authority, or acted oppressively or unfair toward minority shareholders.... The Commission agreed that in the context of a closely-held corporation our court should be free to look beyond direct harm to the value of a shareholder's investment and to consider all pertinent factors."

See Commissioner's Comment—1972 Amendments N.J.S.A. 14A:12–7 (West 1985)

Plaintiff contends that, as this section allows a shareholder such as plaintiff to bring a direct action against defendants, plaintiff may also maintain this RICO claim. Defendant contends essentially that the inclusion of a state created right such as this in the federal RICO statute contravenes the clear language of the statute and congressional intent.

Neither the parties or the court's own research has turned up any case of a RICO claim brought to redress injury suffered by the corporation where the shareholder was accorded a special right to sue under state law. The issue before me is to what extent can a newly created statutory right under state corporations law enlarge the standing of a plaintiff to bring suit under an exclusively federal cause of action.

■ The "oppressed shareholder" provision in New Jersey corporations law is a narrow statute intended to resolve a specific and recurring situation with close corporations. N.J.S.A. 14A:12–7 "is designed to

prevent a minority shareholder from being concurrently frozen into an inalienable equity interest" and "it attempts to protect management (the majority) from individual disgruntled shareholders who seek to harass company directors and former business associates" when the relationship among individuals in a close corporation has deteriorated. Pachman, *Divorce Corporate Style: Dissension, Oppression and Commercial Morality*, 10 Seton Hall L.Rev. 315, 317 (1979). The statute is intended to provide an alternative besides dissolution or deadlock for a corporation no longer able to function due to the conflicts among its shareholders. Three alternative forms of relief are possible under the statute: appointment of a provisional director, appointment of a custodian and a judicially-ordered sale of stock. *Id.* at 323.

Notably, however, the statute does not provide for monetary damages to the oppressed shareholder; it merely provides for a judicial resolution of a deadlocked corporation. The statute, therefore, only broadens the common law concerning shareholder's right to sue in one specific way, and in no way grants them the right to sue for damage done to the corporation which generally affect the value of corporate assets.

■ I conclude, therefore, that this narrow statutory language should not be read to broaden the standing generally required to bring a RICO action. Although N.J.S.A. 14A:12–7 does not change the general rule in any way that a stockholder cannot sue in his own name for injury done to the corporation, there is a common law exception to this general rule which plaintiff contends is also applicable. Under this exception, a shareholder may sue for the harm inflicted upon the corporation where there exists "a special relationship between the suing shareholder and the defendant, creating a duty, contractual or otherwise, other than that owed to the corporation." *Vincel v. White Motor Corp.*, 521 F.2d 1113, 1118 (2d Cir.1975).

Plaintiff alleges a direct cause of action based on an alleged conspiracy by defendants to get her to sell her stock below value, and for a breach of fiduciary duty by Gerson Goldman as director of Bee-Gee Realty.

"The directors and officers of a corporation owe a fiduciary duty to not use their positions for their own personal advantage, or for the advantage of others, to the detriment of the interest of the stockholders of the corporation."

*See Borak v. J.I. Case. Co.*, 317 F.2d 838, 842 (7th Cir.1963). *See also Scott v. Multi-Amp Corp.*, 386 F.Supp. 44, 67 (D.N.J. 1974).

A dominant or controlling stockholder or group of stockholders is also a fiduciary. *See Pepper v. Litton*, 308 U.S. 295, 306, 60 S.Ct. 238, 246, 84 L.Ed. 281 (1939), cited by *Scott, supra* at 67.

As the court in *Borak* stated,

"A director of a corporation acts as a fiduciary not only to the corporation but also to the stockholders, and the essence of a cause of action by a stockholder, based upon allegations of fraudulent acts by a director, is not the fraud against the corporation, but the fraud of the director as it affects the stockholders."

*Borak* at 845.

As I must accept plaintiff's allegations as true on a motion to dismiss, I find that plaintiff has made out a case of direct harm to her personally. She has a viable cause of action arising out of defendants' breach of fiduciary duty and the alleged conspiracy to force her to sell her stock below value.

As in the *Borak* case, the same facts which support the existence of a derivative cause of action to redress a wrong to a corporation may also state a direct cause of action by a shareholder for relief from injury caused by a defendant's fraudulent practices. *Borak* at 844.

I, therefore, reconsider and reverse my earlier ruling and conclude that plaintiff has standing to bring this cause of action because she alleges direct harm to her personally. Even though plaintiff has standing to bring a RICO action, the complaint must still allege a pattern of racketeering

to be legally sufficient. The Supreme Court addressed this requirement in *Sedima v. Impex*, —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) in footnote 14 which states in part:

As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern requires at least "two acts of racketeering activity." § 1961(s), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a pattern. The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity,' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship ... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern."

Justice Powell's dissent in *Sedima* also pointed to these limitations on the pattern concept. *Id.* 105 S.Ct. at 3289–90. Certainly, lower courts, in flushing out this dicta in *Sedima,* have interpreted a "pattern" of acts to include a component of "similarity" as well as "multiplicity" *Northern Trust Bank/O'Hare v. Inryco,* 615 F.Supp. 828, 831 (N.D.Ill.1985). The predicate acts must be related in the sense that there is "a common perpetrator, common methods of commission or common victims" and multiple in the sense that they occurred in separate criminal "episodes" or transactions. *Allington v. Carpenter,* 619 F. Supp. 474, 477–78 (C.D.Cal.1985). Thus, most courts have found that multiple acts committed in furtherance of the same criminal activity or scheme do not constitute a "pattern" of racketeering activity. *See Arlington* at 478; *Inryco* at 831.

In light of the facts of this case, I conclude that plaintiff has not alleged a pattern of racketeering activity. Plaintiff alleges that defendants on two or more occasions knowingly committed mail fraud in order to implement, effectuate and conceal their scheme to defraud plaintiff. Plaintiff contends that in other counts, incorporated by reference into the 5th Count, she identifies the leases which were improperly entered into in furtherance of the pattern of racketeering. These series of mailings do not constitute a pattern of racketeering where all of them were aimed at implementing a single fraudulent scheme. A "pattern" consists of multiple episodes of racketeering activity, and not simply numerous criminal acts which constitute a single crime. Here, there is essentially one single episode—the fraudulent lease. Any predicate act of mail fraud was towards that single goal.

Plaintiff's Count 5 is therefore dismissed.