254 N.J. Super. 662 (1992)
604 A.2d 194
VIRGINIA I. PEPE, PLAINTIFF-APPELLANT,
v.
GENERAL MOTORS ACCEPTANCE CORPORATION A/K/A GMAC AND RICHARD STANLEY, INDIVIDUALLY, DAVID MOLINAR, INDIVIDUALLY, SAM BALLOU, INDIVIDUALLY, JOHN DOE (1) AND JOHN DOE (2), DEFENDANTS-RESPONDENTS. RICHARD T. PEPE, PLAINTIFF-APPELLANT,
v.
GENERAL MOTORS ACCEPTANCE CORPORATION A/K/A GMAC AND RICHARD STANLEY, INDIVIDUALLY, DAVID MOLINAR, INDIVIDUALLY, SAM BALLOU, INDIVIDUALLY, JOHN DOE (1) AND JOHN DOE (2), DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 29, 1992.
Decided March 18, 1992.
*663 Before Judges GAULKIN, MUIR, Jr. and LANDAU.
Kevin P. McCann argued the cause for appellants (Chance & McCann, attorneys; Laura J. Scruggs, on the brief).
Kenneth L. Steinthal argued the cause for respondents General Motors Acceptance Corp., Richard Stanley, David Molinar and Sam Ballou (Montano, Summers, Mullen, Manuel, Owens & Gregorio and Weil, Gotshal & Manges, of the New York Bar, attorneys; G. Wesley Manuel, Jr., Kenneth L. Steinthal and Nancy S. Scherer, on the brief).
The opinion of the court was delivered by GAULKIN, P.J.A.D.
*664 Plaintiffs Virginia I. Pepe and Richard T. Pepe brought these actions against defendant General Motors Acceptance Corporation (GMAC) and certain of its agents to recover damages arising out of what the Pepes called "the demise of the Pepe empire" of automobile dealerships, then in bankruptcy. Judge Kleiner dismissed the complaints upon his finding that the Pepes "may not proceed as individuals to assert a cause of action against the defendants" and that "[i]f there is a cause of action for the defendants' acts, it is a chose in action, which is the property right of the trustee in bankruptcy." The Pepes appeal. We affirm.
The Pepes owned and operated, in corporate form, ten automobile dealerships in South Jersey. According to their complaints, the corporations developed a relationship with GMAC, "the lending branch of General Motors," pursuant to which GMAC loaned money for floor plan financing, dealership acquisition, capitalization loans, acquisition of inventory and equipment and purchase of real estate. Starting in late 1987, GMAC altered its practices and "made it very difficult to conduct business," thereby causing "untold financial problems and reputation problems to the Pepe dealerships." In pursuit of a scheme "to bankrupt and destroy ... the Pepe automobile empire," GMAC placed "keepers" in the dealerships "for the purpose of monitoring the transactions taking place." Having thus "actually assumed control" of the dealerships, GMAC "destroyed" their business. The dealerships filed for Chapter 11 bankruptcy relief on August 24, 1988.
Based on those allegations, the Pepes asserted eleven overlapping and duplicative causes of action against GMAC and its agents, for (1) "breach of the covenant of good faith and fair dealing," (2) fraud, (3) negligent misrepresentation, (4) intentional misrepresentation, (5) intentional, negligent and reckless destruction of the dealerships, (6) bad faith conduct designed to "squeeze and destroy" the dealerships, (7) intentional destruction *665 of the dealerships, (8) malicious interference with the Pepes' contractual relations with the franchisors and banks, (9) negligent destruction of "the Pepe empire," (10) wilful or negligent destruction of Richard Pepe's "name" in their "financial dealings with others" and (11) again, intentional destruction of the dealerships. The complaints demanded compensatory damages of $115,000,000 as well as punitive damages.
The complaints were filed on August 2, 1990, almost two years after the Bankruptcy Court had approved a lengthy and comprehensive stipulation entered into by the dealerships, the Pepes, the bankruptcy trustee for the dealerships and the principal secured creditors including GMAC. The stipulation recited that it had been "proposed" by the debtors "to encourage and induce GMAC [and the other secured creditors] to permit the use of cash collateral by Debtors and thereby enable the Debtors to obtain and replenish an inventory of motor vehicles, parts and supplies which are necessary for the operation of the Debtors' respective businesses." Paragraph 58 of the stipulation provided as follows:
As part and parcel of the consideration for entering into this stipulation, the debtors, trustee, and debtor-in-possession hereby release and discharge the secured creditors, their respective officers, agents, employees, successors, assigns, subsidiary and parent corporations, and insurers of and from any claim, demand, right or cause of action of any nature whatsoever, without limitation, specifically, including any and all claims, demands, rights or causes of action for lender liability resulting from secured creditors' prior dealings with the debtors and the principals. The claims from which the debtors, trustee and debtor-in-possession are releasing secured creditors include, but are not limited to, fraud, constructive fraud, duress, interference with corporate governments or contractual relations, breach of contract and defamation.
The stipulation was approved by Bankruptcy Judge Wizmur and entered of record in the Bankruptcy Court on October 12, 1988.[1]
*666 The causes of action pleaded by the Pepes all assert losses sustained by them as the result of the destruction of their corporations. As such, the claims are entirely derivative of causes of action which, but for their release by the bankruptcy stipulation, would be available to the corporations. The law is clear and uniform: shareholders cannot sue for injuries arising from the diminution in value of their shareholdings resulting from wrongs allegedly done to their corporations. See, e.g., Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 732 (3d Cir.1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971); Ash v. I.B.M., 353 F.2d 491, 493- 494 (3d Cir.1965), cert. denied, 384 U.S. 927, 86 S.Ct. 1446, 16 L.Ed.2d 531 (1966); Loeb v. Eastman Kodak Co., 183 F. 704, 709 (3d Cir.1910). Nor can stockholders assert individual claims for wages or other income lost because of injuries assertedly done to their corporations. See Pitchford v. PEPI, Inc., 531 F.2d 92, 96-98 (3d Cir.1975), cert. denied, 426 U.S. 935, 96 S.Ct. 2649, 49 L.Ed.2d 387 (1976). The Pepes argue that their role as guarantors of the debt of the dealerships establishes a "special relationship" creating duties owing directly to them; but the case law is to the contrary. See, e.g., Mid-State Fertilizer Co. v. Exchange Nat'l Bank, 877 F.2d 1333, 1336 (7th Cir.1989); Sherman v. British Leyland Motors, Ltd., 601 F.2d 429, 439-440 (9th Cir.1979); Wells Fargo Ag Credit Corp. v. Batterman, 229 Neb. 15, 424 N.W.2d 870, 874 (1988). Similarly, the fact that the Pepes had given mortgages and other collateral to GMAC to secure the obligations does not render their claims any less derivative of the corporate claims.
In stating essentially those conclusions, Judge Kleiner relied largely on Taggart & Taggart Seed, Inc. v. First Tenn. Bank Nat'l Ass'n, 684 F. Supp. 230 (E.D.Ark. 1988), aff'd, 881 F.2d 1080 (8th Cir.1989). That case was brought by shareholders against the corporation's principal financing institution, alleging the intentional or negligent breach of a loan agreement and resultant emotional distress and economic loss to the plaintiffs. The trial court dismissed the complaint because the injuries *667 alleged by the shareholders "are incidental to and derivative of the injury alleged to the corporate entity" (id. at 234); although some of the stockholders were guarantors of the loans, the corporation remained "the real party in interest" (id. at 235). Relying on Small v. Goldman, 637 F. Supp. 1030 (D.N.J. 1986), as the authority most favorable to their position, the Pepes urge us to reject Taggart and the other cases stating the same principles. We decline that invitation.
Small is inapposite. The court there permitted a shareholder to maintain an individual RICO cause of action "based on an alleged conspiracy by defendants to get her to sell her stock below value, and for a breach of fiduciary duty by [the director of the corporation]." Id. at 1033. Confirming that "only the corporation may bring a RICO action to redress injury suffered by the corporation unless the shareholder can also show some specific direct harm to her personally" (id. at 1031), Judge Ackerman found that plaintiff's allegations made out a case of "direct harm to her personally" (id. at 1033). On its face, a conspiracy to force a stockholder to sell her stock below value is a wrong suffered directly and solely by the shareholder, not derivative of any loss or injury sustained by the corporation. Small is thus of no assistance to the Pepes. See also Judice's Sunshine Pontiac, Inc. v. General Motors Corp., 418 F. Supp. 1212 (D.N.J. 1976).
Dismissal of the Pepe claims does not result in a wrong without a remedy. The remedy for misconduct of GMAC or any other party against the dealerships is in the hands of the bankruptcy trustee and the Bankruptcy Court. The trustee released any claims against GMAC in consideration of the secured creditors' undertakings to try to keep the Pepe corporations in business. We have no knowledge, and we express no opinion, as to the wisdom of that release. We hold only that causes of action arising out of GMAC's alleged destruction of the dealerships may not be pursued by the Pepes but are solely for the trustee acting under the aegis of the Bankruptcy Court.
The judgment is affirmed.
NOTES
[1] The District Court subsequently dismissed the trustee's appeal raising certain challenges to the order approving the stipulation. Paragraph 58 apparently was not addressed in that proceeding.