NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0203-13T3

DELRAY HOLDING, LLC, and
BAY DOCK HOLDINGS, LLC,

     Plaintiffs-Respondents,

v.

SOFIA DESIGN AND DEVELOPMENT AT
SOUTH BRUNSWICK, LLC, SOFIA
HOMES, LLC, ANNE KELLY,
and BURGESS STEEL, LLC,

     Defendants,

and

THE GUERIN FAMILY TRUST,
EUGENE GUERIN, JAMES GUERIN,
LOUIS FILOSO, MICHAEL REILLY,
STEVEN LANGAN, JAMES CAREY, and
MARZENA CAREY,

     Defendants/Third-Party
     Plaintiffs-Appellants,

v.

ROGER PASSARELLA,

     Third-Party Defendant-
     Respondent.

| APPROVED FOR PUBLICATION |
| :---: |
| **March 2, 2015** |
| **APPELLATE DIVISION** |

_____

Argued December 3, 2014 — Decided March 2, 2015

Before Judges Fuentes, Ashrafi, and Kennedy.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3425-11.

Andrew T. Walsh argued the cause for appellants (Chamlin, Rosen, Uliano & Witherington, attorneys; Mr. Walsh, on the brief).

Tennant D. Magee, Sr., argued the cause for respondents (Maggs & McDermott, L.L.C., attorneys; Mr. Magee, on the brief).

The opinion of the court was delivered by

ASHRAFI, J.A.D.

Appellants are individuals and a family trust that invested in two real estate development companies, Sofia Homes, LLC (Sofia Homes) and Sofia Design & Development at South Brunswick, LLC (Sofia Design) (jointly the Sofia Entities). The companies failed financially and were forced into bankruptcy proceedings. In the course of the bankruptcy case and other litigation, the Sofia Entities settled claims against respondent Roger Passarella and two real estate development companies that he owns, respondents Delray Holding, LLC, and Bay Dock Holdings, LLC.

This appeal is from summary judgment granted against appellants when they claimed in their individual capacities that respondents had interfered with their investment agreements with the Sofia Entities and thus damaged their interests. The trial court concluded the claims belonged to the Sofia Entities, and

2                                                          A-0203-13T3

therefore appellants lacked standing to bring them as individuals. As an alternative ground, the court determined that appellants did not refute respondents' accounting evidence, which showed that respondents did not cause any damages to the Sofia Entities. We affirm the trial court's decision.

I.

Sofia Homes, a construction company primarily engaged in residential development, owned property in Freehold known as the Liberty Crossing project. It was also the principal owner and the sole Class A member of Sofia Design, which was formed to develop and operate a single property in South Brunswick, an office building to be named Gateway Commons. Appellants are variously members of Sofia Homes, Class B members of Sofia Design, or investors in the development projects.

In 2006, Sofia Homes entered into a contract with respondent Bay Dock Holdings, LLC, to develop residential property in Wall Township. Sofia Homes and Bay Dock also entered into a cost sharing agreement for site improvements on their adjacent lands in Freehold.

In 2009, respondents assisted the Sofia Entities in obtaining financing from Amboy National Bank for the Gateway Commons project. Anthony D'Amore, III, was then a member of Sofia Homes and Sofia Design, and also an undisclosed employee

of Bay Dock. He told appellants that Bay Dock was willing to offer its Freehold property as collateral for Sofia Design to receive additional funding for the Gateway Commons project. In exchange, Sofia Design would satisfy tax liens on Bay Dock's Freehold property and elevate D'Amore to managing member of Sofia Design. After the parties reached an agreement, Bay Dock transferred ownership of its Freehold land to a new company, respondent Delray Holding, LLC, which was created and owned by Passarella as its sole member.

The parties dispute the events that led to the financial failure of the Sofia Entities. However, it is undisputed that D'Amore transferred loan proceeds that belonged to the Sofia Entities to a bank account controlled by Bay Dock. Appellants allege that D'Amore conspired with Passarella to divert the funds as part of a secret plan to gain control of the Gateway Commons project. According to appellants, the diversion of the loan proceeds caused the Sofia Entities' projects to fail, which in turn led to the loss of appellants' equity interests, investments, loans, and anticipated profits to be derived from those projects.

Respondents, on the other hand, contend that D'Amore transferred the loan proceeds for the benefit of the Sofia Entities. They contend his purpose was to prevent Charles

4

Kelly, another member of Sofia Homes who is not a party in this litigation, from using the funds improperly for other ventures and personal obligations. See In re D'Amore, 472 B.R. 679, 684 (Bankr. D.N.J. 2012). Respondents argue that D'Amore paid debts owed by the Sofia Entities out of the Bay Dock account, see ibid., and that he ultimately paid more on behalf of the Sofia Entities than he transferred into the Bay Dock account from the loan proceeds. Respondents contend the Sofia Entities suffered no losses but actually benefitted from the diversion of the loan proceeds.

By 2010, D'Amore had resigned from one of the Sofia Entities and been voted out as a member of the other. Litigation ensued. In March 2010, the Sofia Entities, Charles Kelly, and appellants filed a complaint in Superior Court, Monmouth County (MON-L-1430-10), against Bay Dock, Passarella, and D'Amore alleging misappropriation, conversion, and related causes of action.

D'Amore filed a voluntary petition for bankruptcy in August 2010, which stayed the Monmouth County action as to him. D'Amore, supra, 472 B.R. at 684. In December 2010, the plaintiffs in the Monmouth County action filed an adversary complaint in the Bankruptcy Court against D'Amore, asserting claims for fraud, defalcation, and similar causes of action.

Ibid. Subsequently, D'Amore moved for summary judgment in the Bankruptcy Court, contending among other grounds that the individual investors and members of the Sofia Entities lacked standing to pursue their claims against him. Id. at 684-85.

By written decision dated May 31, 2012, the Bankruptcy Court agreed with D'Amore. The court stated the funds that were allegedly misappropriated were the property of the Sofia Entities, not the property of the individual LLC members or investors. Any damages that could be claimed by the individuals flowed through the companies and could not be claimed directly by them. Id. at 694-95. The Bankruptcy Court dismissed the individual claims of appellants. Id. at 696.

On July 5, 2012, the Monmouth County court in MON-L-1430-10 granted summary judgment on the same ground to Bay Dock and Passarella.

The lawsuit that is the subject of this appeal, MON-L-3425-11, was originally brought by Delray and Bay Dock. They claimed the Sofia Entities and the individual defendants owed them money on the several development agreements of the companies. Appellants filed a counterclaim, and also a third-party complaint against Passarella. Appellants sought compensation for the loss of their investments and anticipated profits in the Gateway Commons and the Liberty Crossing projects on the ground

that the diversion of the loan proceeds was tortious interference with their investment agreements with the Sofia Entities and also entitled them to civil remedies under New Jersey's racketeering (RICO) statute, N.J.S.A. 2C:41-2, -4.

In December 2012, respondents and the Sofia Entities settled their disputes and dismissed all claims against one another, both in the bankruptcy proceedings and in the Monmouth County cases. As part of the settlement, respondents paid $225,000 to the Sofia Entities.

On July 26, 2013, the Law Division in this case granted summary judgment in favor of respondents. The court held that the claims remaining in the case were corporate claims and that appellants lacked standing to assert them as individuals. The court also determined that appellants did not have evidence of any damages from D'Amore's diversion of the loan proceeds to Bay Dock because they had not challenged respondents' accounting, which showed that Bay Dock paid out more on behalf of the Sofia Entities than it took in from their loan proceeds.

This appeal is from the summary judgment order dismissing all the claims contained in appellants' counterclaim and third-party complaint.

A-0203-13T3

## II.

It is a fundamental principle of corporate law that:

> A corporation is regarded as an entity
> separate and distinct from its shareholders.
> It is a principle of corporation law that
> [r]egard for the corporate personality
> demands that suits to redress corporate
> injuries which secondarily harm all
> shareholders alike are brought only by the
> corporation. . . . The prevailing American
> rule is that [w]hen an injury to corporate
> stock falls equally on all stockholders,
> then an individual stockholder may not
> recover for the injury to his stock alone,
> but must seek recovery derivatively in
> behalf of the corporation.
>
> [Strasenburgh v. Straubmuller, 146 N.J. 527,
> 549-50 (1996) (citations and internal
> quotation marks omitted).]

Shareholders in a corporation may only sue individually when they suffer a "special injury," as distinct from injuries suffered by all shareholders. Pepe v. Gen. Motors Acceptance Corp., 254 N.J. Super. 662, 666 (App. Div.), certif. denied, 130 N.J. 11 (1992). "A special injury exists 'where there is a wrong suffered by [a] plaintiff that was not suffered by all stockholders generally or where the wrong involves a contractual right of the stockholders, such as the right to vote.'" Strasenburgh, supra, 146 N.J. at 550 (quoting In re Tri-Star Pictures, Inc., 634 A.2d 319, 330 (Del. 1993)). To determine whether a claim presents an individual cause of action or a derivative claim belonging solely to the corporation, "courts

examine the nature of the wrongs alleged in the body of the complaint, not the plaintiff's designation or stated intention." Id. at 551 (citing Lipton v. News Int'l, Plc, 514 A.2d 1075, 1078 (Del. 1986)).

Our decision in Pepe, supra, 254 N.J. Super. 662, is directly on point with respect to the issue in this appeal. In that case, Virginia and Richard Pepe asserted contract and tort claims resulting from the financial failure of the ten corporate automobile dealerships they owned as shareholders. Id. at 664-65. We held that the Pepes' claims:

> all assert losses sustained by them as the result of the destruction of their corporations. As such, the claims are entirely derivative of causes of action which, but for their release by the bankruptcy stipulation, would be available to the corporations. The law is clear and uniform: shareholders cannot sue for injuries arising from the diminution in value of their shareholdings resulting from wrongs allegedly done to their corporations. . . . Nor can stockholders assert individual claims for wages or other income lost because of injuries assertedly done to their corporations.
>
> [Id. at 666 (citations omitted).]

Here, appellants make tort claims similar to those the Pepes made. Their claims of tortious interference with their investment agreements are entirely dependent on losses the Sofia Entities allegedly sustained as a result of the financial

9                                                          A-0203-13T3

failure of the companies. The individual claims derive from the claims that the Sofia Entities had against respondents and that were settled in exchange for a substantial payment by respondents.

Appellants cite no cases to support their argument that they have standing to sue as individuals for the alleged losses of the Sofia Entities. Their conclusory statements that they "had a protected interest" and that their claims are not identical to those of the Sofia Entities' claims are not sufficient to overcome the prevailing law with respect to standing to sue.

Nor can an independent investor in a corporation sue for debts owed to the corporation. If it were otherwise, any investor or creditor could undermine the corporation's settlement of a dispute and bring an individual claim for causes of action that belong to the corporation. The Sofia Entities settled their claims against respondents, and individual investors and creditors cannot revive those same claims by asserting an individual cause of action.

Because the members and other investors have not alleged an injury caused by respondents that is distinct from that suffered by any shareholder, investor, or creditor of the corporate

entities, they lack standing to assert their claims of tortious interference or racketeering violations.

## III.

A secondary ground for summary judgment was that, even if appellants have standing to pursue their claims, they failed to produce evidence to contradict respondents' accounting. The trial court discussed the importance of the accounting evidence presented on respondents' summary judgment motion:

> [T]he accounting records indicate that the amount put into the [Bay Dock] account . . . was less than the amount paid out of the account for corporate bills [of the Sofia Entities]. Thus, these records indicate that D'Amore did not gain personal benefit from those funds and neither did [Bay Dock] or Passarella. . . . [A]ccording to the record evidence and the uncontested calculations by [respondents], the accounting records suggest that the [Bay Dock] account was used to pay for [the Sofia Entities'] corporate bills. Thus, [appellants] have failed to establish how D'Amore's deposit of the proceeds into the [Bay Dock] account . . . caused their injuries or resulted in damages. As such, apart from the issue of standing, the evidence here is so one-sided that [respondents] must prevail as a matter of law with regard to the counterclaims.

Appellants dispute this finding of the court. They rely on a certification of their attorney, and the exhibits attached to that certification, and claim there was opposing accounting

evidence. They contend that whether the diversion of the loan proceeds damaged the Sofia Entities is a disputed issue of fact.

In December 2013, respondents moved in this court to strike from our record on appeal the certification of appellants' attorney dated September 18, 2012, and its accompanying exhibits. Respondents asserted that these items were not included in the summary judgment papers submitted to the trial court. By order dated January 24, 2014, we remanded to the trial court pursuant to Rule 2:5-5(a) for the limited purpose of settling the summary judgment record. On March 5, 2014, the motion judge issued a letter-decision stating that the trial court had not retained the summary judgment record. Although the judge could not verify the summary judgment record, he inferred from the contents of the parties' motions in this court that the 2012 certification and its exhibits were not part of the summary judgment record.[1]

Appellants are not able to assert that their attorney's 2012 certification was submitted in opposition to the summary

---

[1] We have not been formally informed of the record-retention practices of the Law Division, but we know that the court discarded the motion papers in less time than six months from the summary judgment order of July 26, 2013, until our remand order of January 24, 2014. Even a timely notice of appeal did not prompt the Law Division to retain the papers pertinent to this appeal. Civil litigants would be well-advised to keep accurate records of motions and other papers in the event of an appeal or other future proceedings.

judgment motion in this case. Instead, they contend it was submitted in a motion for summary judgment in the prior Monmouth County case, MON-L-1430-10. Nevertheless, appellants argue that all parties had in their possession an accounting exhibit that contradicts respondents' evidence. Appellants contend that, therefore, respondents' accounting was in fact disputed.

Appellants cannot base a challenge to factual evidence presented for the court's summary judgment review on evidence that was not presented to the court but was instead presented in a different although related case.

Furthermore, the contradictory accounting evidence upon which appellants now rely is only a single page summary of several figures with no explanation or backup information. In contrast, respondents submitted a detailed spreadsheet of a "Cash Analysis" of "All Transactions" of the Bay Dock account. The trial court viewed respondents' detailed accounting evidence to be "unchallenged" for purposes of the summary judgment motion. We can find no error in the court's determination.

Appellants also argue that the accounting evidence is irrelevant to this case because their claim is not for the misappropriation of the Sofia Entities' funds. They are mistaken. The accounting evidence is relevant to whether appellants can prove damages and causation. If Bay Dock in fact

paid out more on behalf of the Sofia Entities for legitimate debts related to the appropriate projects than D'Amore removed from their loan proceeds, Bay Dock did not cause any damage to the Sofia Entities. Consequently, respondents cannot be held responsible for the financial failure of those companies and the loss of appellants' investment interests.

                            IV.

Having concluded that respondents were entitled to summary judgment on both grounds — lack of standing and the merits of appellants' claims for damages — we need not address any other arguments raised by either side in this appeal.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0203-13T3