**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0546-24

SPENCER SAVINGS BANK, S.L.A.,

    Plaintiff-Appellant/
    Cross-Respondent,

v.

ARTHUR WEIN and LAWRENCE
B. SEIDMAN,

    Defendants/Third-Party
    Plaintiffs-Respondents/
    Cross-Appellants,

v.

JOSE GUERRERO, NICHOLAS
LORUSSO, THOMAS DUCH,
ADA MCGUINNESS,
ESTATE OF PETER HAYES and
BARRY MINKIN,

    Third-Party Defendants-
    Appellants/Cross-Respondents.

_____

Argued March 18, 2026 – Decided April 8, 2026

Before Judges Mayer, Gummer, and Paganelli.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000129-22.

Timothy P. Malone argued the cause for appellants/cross-respondents (Pashman Stein Walder Hayden, PC, attorneys; Sean Mack, Timothy P. Malone and Darcy Baboulis-Gyscek, on the briefs).

Peter R. Bray argued the cause for respondents/cross-appellants (Bray & Bray, LLC, attorneys; Peter R. Bray, on the briefs).

PER CURIAM

This appeal is another chapter in the parties' decades-long dispute regarding control of plaintiff Spencer Savings Bank, S.L.A. (the Bank). The appeal arises out of the latest effort by the Bank's board of directors (the Board) to convert the Bank from a mutual savings and loan association to a mutual savings bank. In Seidman v. Spencer Savings Bank, S.L.A. (Seidman VII), No. A-2947-20 (App. Div. Nov. 29, 2022), we affirmed a judgment invalidating a 2019 resolution to convert the Bank.

This appeal is about the Board's 2022 conversion resolution. Following a trial, the chancery court found the Board's primary reason for adopting the 2022 conversion resolution was to prevent defendant Lawrence B. Seidman and his associates from gaining a position on the Board and the Board thereby had improperly attempted to entrench itself. The court entered an order invalidating

the 2022 conversion resolution and finding the third-party defendant Board members had breached their fiduciary duty.

Plaintiff and third-party defendants appeal from that order as well as a subsequent order denying their motion for partial reconsideration. Defendants/third-party plaintiffs cross appeal, challenging the court's denial of their fee application and contending the court failed to address count four of the third-party complaint.

Considering the arguments raised in plaintiff's and third-party defendants' appeal, we discern no reversible error. The chancery court's factual findings are supported by substantial credible evidence, and its legal conclusions are supported by governing law. Considering the arguments raised in the cross-appeal, we vacate the dismissal of count four of the third-party complaint and remand with instructions the chancery court address and decide the claims in that count. We otherwise affirm.

I.

The Bank is a mutual savings and loan association established under the New Jersey Savings and Loan Act (the S&L Act), N.J.S.A. 17:12B-1 to -319. Pursuant to the S&L Act, depositors and borrowers of a mutual savings and loan association are members of the association, N.J.S.A. 17:12B-74, and, as

members, they elect the association's directors, N.J.S.A. 17:12B-63. The board of directors manages and directs the "business and affairs" of the association. N.J.S.A. 17:12B-62.

Defendants Seidman and Arthur Wein are members of and have deposit accounts with the Bank. Seidman is a professional investor and money manager, who is in the business of buying and selling publicly-traded bank stocks.

Third-party defendants Jose Guerrero, Nicholas Lorusso, Thomas Duch, Ada McGuinness, Peter Hayes, and Barry Minkin were members of the Board in 2022. Hayes died during the pendency of the lawsuit. Defendants named his estate as a third-party defendant in his place. We refer to the third-party defendants as "directors."

The parties have an extensive litigation history. See Seidman VII, slip op. at 4-5; Seidman v. Spencer Sav. Bank, S.L.A. (Seidman V), Nos. A-2039-17, A-4739-17 (App. Div. Oct. 3, 2019) (slip op. at 3 n.2). We focus on the aspects of that history that are particularly relevant to this appeal.

In February 2019, the Board adopted a resolution to convert the Bank to a New Jersey mutual savings bank. Mutual savings banks are governed by a board of managers, who elect their own successors. N.J.S.A. 17:9A-188(A) and (D).

4

Thus, if the Bank was converted to a mutual savings bank, its members would no longer vote for its directors.

A month after the Board adopted the 2019 conversion resolution, Seidman and Wein sued the Bank and five of its directors, including Guerrero, Lorusso, Hayes, and Minkin, asserting, among other things, the Board's actions were motivated by the Board's improper desire to entrench itself. After conducting a trial, the chancery court issued a decision on July 31, 2020. The court found the "Board members were primarily motivated by their desire to stop Seidman from becoming a member of the Board" and that by approving the 2019 conversion resolution, they had "primarily acted to entrench their positions and, therefore, they were not acting in the Bank's best interest." Seidman VII, slip op. at 10. The court also found Seidman and Wein "had brought the suit as a direct suit supporting their own interests compared to a derivative suit on behalf of all members" but nevertheless concluded it would award them counsel fees. Ibid.

Following the parties' reconsideration motions, the court issued an order and written statement of reasons on April 29, 2021, rejecting the argument the directors had relied on the advice of counsel in adopting the 2019 conversion resolution, rejecting Seidman's and Wein's claim they had brought the lawsuit derivatively, and vacating the counsel-fee award. Id. at 11. On June 21, 2021,

A-0546-24

the court entered a final judgment, invalidating the 2019 conversion resolution, declaring the directors had violated their fiduciary duties, and denying Seidman's and Wein's counsel-fee application. Ibid. The Bank and the directors appealed that judgment; Seidman and Wein cross-appealed. Id. at 12.

Less than six weeks after entry of the final judgment, the Board on July 31, 2021, approved a new "July 2021 Strategic Plan." As set forth in the plan, an express "key assumption[]" of the plan was that "the [Qualified Thrift Lender (QTL)] barrier [would be] removed by early 2022, thus enabling the Bank to more fully pursue its commercial strategy." As a mutual savings and loan association, the Bank is subject to a federal QTL requirement set forth in 12 U.S.C. §1467a(m). To comply with the QTL requirement, a mutual savings and loan association must maintain at least sixty-five percent of its portfolio in "qualified thrift investments." Id. at §1467a(m)(1)(B)(i). Qualified thrift investments largely consist of residential mortgages. Id. at §1467a(m)(4)(c)(ii). State mutual savings banks are not subject to the QTL requirement. In the July 2021 Strategic Plan, the Bank stated its intention to "pursue viable charter alternatives to remove the QTL barrier . . . ."

While the appeals of the invalidation of the 2019 conversion resolution were pending, the Board on June 9, 2022, held a meeting during which it

6

discussed adopting a new conversion resolution consistent with the July 2021 Strategic Plan. Ronald S. Riggins, a banking consultant, addressed the Board during the meeting, stating the "long-term goal" of the July 2021 Strategic Plan was "to transition to a . . . [New Jersey] mutual savings bank" and "[t]he plan fully contemplated being able to remove . . . the QTL barrier applicable to a New Jersey [s]avings and [l]oan [a]ssociation . . . through a charter change to a New Jersey mutual savings bank" sometime "in the early part of 2022." Outside counsel Douglas Faucette advised the Board to eliminate the QTL requirement by converting the Bank to a mutual savings bank. Retired New Jersey Supreme Court Justice Gary Stein told the Board, based on information provided by others during the meeting, it had "good reason . . . to convert to a savings bank" because conversion would enable the Bank to avoid the QTL requirement and engage in more commercial loans. He described impeding Seidman's ability to gain a seat on the Board as "one of the side benefits of conversion" the Board had a right to consider.

During a July 6, 2022 meeting, the Board adopted a "Mutual Savings Bank Conversion Proposal" and a resolution to present the conversion plan to its members.

A-0546-24

On July 11, 2022, the Bank filed a verified complaint and order to show cause application seeking, among other relief, a declaration that: (1) the 2022 conversion resolution was valid and did not constitute a breach of fiduciary duties; (2) proxy materials regarding the conversion were not misleading and could be presented to its members; and (3) the Bank could proceed with soliciting votes and holding a member vote on the conversion plan. The Bank named Seidman and Wein as defendants, stating it was "a certainty" they would challenge the conversion plan in court.

On September 6, 2022, defendants filed an answer and counterclaim, contending the conversion plan was "infirm, invalid and voidable . . . because it [wa]s yet another effort [by the Board] to permanently entrench." Defendants described themselves as "the functional equivalent of derivative members who seek to enforce a secondary right on behalf of [the Bank] and all members" because the Bank had "cast [them] as representatives of [the Bank] and its members" by naming them as the only defendants. They sought a preliminary injunction pursuant to Rule 4:32-3 requiring the Bank to send notice of the action to all members, counsel fees and costs as representative parties, and a judgment invalidating the 2022 conversion plan and prohibiting a member vote on it.

On October 3, 2022, defendants filed a third-party complaint against the directors, alleging they had "violate[d] their duties as directors" and had acted to "further [their] own financial interests while forsaking the interests of [the Bank] and its members" by again adopting a conversion plan. Contending they were acting derivatively on behalf of the Bank and its members, defendants sought a judgment: invalidating the 2022 conversion resolution; enjoining the Board from presenting the conversion plan for a vote, scheduling a meeting for a vote, and communicating with members about a meeting for the vote; and awarding defendants compensatory, ancillary, and punitive damages, and counsel fees and costs. In the fourth count of the third-party complaint, defendants sought a judgment declaring the directors were not entitled to be indemnified by the Bank in this action and "an award of damages to reimburse [the Bank] for the fees and expenses it advanced."

On November 29, 2022, we issued our opinion in Seidman VII. Affirming the invalidation of the 2019 conversion resolution, we concluded "substantial credible evidence support[ed] the chancery court's finding of entrenchment." Seidman VII, slip op. at 17, 25. After agreeing with the Bank's and directors' general point that the chancery court's "ruling on the motive for the 2019 Conversion Resolution should not be forever binding," we held:

9

A-0546-24

Any future resolution to convert the Bank, if challenged, will need to be assessed based on the facts and circumstances at the time of the future vote. Nevertheless, that the chancery court found that the vote taken in February 2019 was primarily motivated to entrench the existing Board and to prevent Seidman and his associates from becoming Board members would not be irrelevant to that assessment. In other words, although the passage of time and change of circumstances may establish that a future vote on conversion was motivated by appropriate reasons, the history of the Board's past actions is still a relevant consideration.

[Id. at 14-15.]

On the cross-appeal, we rejected Seidman's and Wein's contention the court had erred in finding they had not brought the lawsuit derivatively. Id. at 24.

In September 2023, the chancery court conducted a four-day trial in this case. The Bank and directors offered the testimony of: Steven Fusco, the Bank's chief financial officer; John Duncan, the Bank's chief lending officer; Faucette; Justice Stein; Riggins, who was admitted as an "expert in strategic planning in finance within the banking industry"; and the five living directors. Defendants presented five witnesses: Howard Henick, a hedge-fund manager and Bank depositor; Gary Bronstein, a financial-services attorney who was admitted as an expert in bank governance and regulatory matters; Marizel Collazo, the Bank's secretary; Graham O. Jones, the Bank's general counsel; and Seidman. The court

10

granted the parties' subsequent motions to re-open the record and heard additional testimony from Faucette.

On August 30, 2024, the court entered an order and written decision invalidating the 2022 conversion resolution and concluding the directors had breached their fiduciary duty. Given that decision, the court dismissed the Bank's complaint and defendants' claims seeking to enjoin the directors from presenting the conversion plan for a vote, scheduling a meeting for a vote, and communicating with members about a meeting for a vote. The court denied defendants' claims for damages and counsel fees and costs and in its decision dismissed all remaining claims in the third-party complaint.

The Bank and directors moved for partial reconsideration of the order, focusing on the fiduciary-duty finding. The court denied the motion in an October 11, 2024 oral decision and an October 15, 2024 order.

The Bank and directors appeal the August 30, 2024 and October 15, 2024 orders. Defendants cross-appeal.

II.

The standard of review in an appeal following a bench trial is well-established. Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017). We apply "'a deferential standard'" when we "review a 'trial court's

determinations, premised on the testimony of witnesses and written evidence at a bench trial.'" Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 336 (App. Div. 2021) (quoting D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013)). "[W]e do not disturb the factual findings . . . of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence so as to offend the interests of justice[.]" Ibid. (second alteration in original) (quoting D'Agostino, 216 N.J. at 182). "[A] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

We review a trial court's order on a reconsideration motion under an abuse-of-discretion standard. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). "An abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)) (internal quotation marks omitted).

12

A.

First, we address the appeal by the Bank and the directors. On appeal, they argue the chancery court erred in precluding the Bank from seeking member approval of its 2022 conversion plan based on the Bank's financial success in 2022, failing to apply the correct legal analysis on the issue of entrenchment given the directors' purported dual motivation in adopting the 2022 conversion resolution, and failing to find advice of counsel insulated the directors from a breach-of-fiduciary-duty claim.

Having reviewed the Bank's and the directors' arguments in light of the evidence at trial and the governing law, we are not persuaded by any of them. The chancery court heard the testimony of the witnesses, considered the evidence presented and made factual, credibility, and legal findings, which were supported by substantial, credible evidence at trial and applicable legal principles.

The Bank and the directors assert the court placed undue weight on the undisputed fact the Bank was profitable in 2022 and improperly based its conclusion the Board's adoption of the 2022 conversion resolution was "premature" "solely" on that fact. But the court's decision was not so limited and was premised on more than just the Bank's 2022 profitability.

A-0546-24

The court fairly considered the Bank's financial position in the context of the Bank's and the directors' assertions the conversion and resulting elimination of the QTL requirement was an economic imperative for the Bank. Considering our holding in Seidman VII, the chancery court reviewed the evidence before it, including evidence regarding the Bank's financial condition, to determine whether a "change of circumstances" had occurred that would support the contention the Board's adoption of the 2022 conversion resolution, unlike its adoption of the 2019 conversion resolution, "was motivated by appropriate reasons." Seidman VII, slip op. at 15. In the full context of the case, the court did not err in considering the Bank's 2022 profitability and did not give it undue weight.

The court did not misapply the law in concluding the directors had breached their fiduciary duties through entrenchment. The Bank and the directors contend that because the directors had "dual motivations" in adopting the 2022 conversation resolution, "one legitimate and one entrenching," they were free to adopt the resolution even though in doing so they were entrenching themselves. In making that argument, the Bank and the directors disregard applicable New Jersey law and the court's finding that their primary motivation was entrenchment.

14

A claim of entrenchment is premised on the fiduciary duty of loyalty, which prohibits directors from acting in self-interest. See Scheidt v. DRS Tech., Inc., 424 N.J. Super. 188, 200-02 (App. Div. 2012). To demonstrate a claim of entrenchment, a party must demonstrate: (1) the "directors engaged in action which had the effect of protecting their tenure"; and (2) "the action was motivated primarily or solely for the purpose of achieving that effect." Id. at 202 (quoting Benihana of Tokyo, Inc. v. Benihana, Inc., 891 A.2d 150, 186 (Del. Ch. 2005), aff'd, 906 A.3d 114 (Del. 2006)). "The fact that a plan has an entrenchment effect . . . does not mean that the board's primary or sole purpose was entrenchment." Benihana, 891 A.2d at 186. However, "[w]here a board's actions are shown to have been taken for the purpose of entrenchment, they may not be permitted to stand." Ibid.

After considering all of the evidence presented at trial, the court found the 2022 conversion resolution was "primarily motivated to prevent Seidman and his associates from gaining a position on the Board" and "[i]n doing so the Board was acting to entrench itself, thereby breaching its fiduciary duty." We have no basis to disturb that factual finding, which was supported by substantial, credible evidence in the record. Because the Board, in adopting the 2022 conversion resolution, "was motivated primarily . . . for the purpose of achieving that"

15

entrenchment, the court concluded defendants had demonstrated their claim of entrenchment. Scheidt, 424 N.J. Super. at 202 (quoting Benihana, 891 A.2d at 186). And that entrenchment could "not be permitted to stand." Benihana, 891 A.2d at 186.

The court did not err in rejecting the directors' advice-of-counsel defense. To pursue an advice-of-counsel defense, a party must prove he or she received and "relied on counsel's advice and that the advice was given after a full and fair presentation to counsel of all of the relevant facts." LoBiondo v. Schwartz, 199 N.J. 62, 95 (2009). The Board may have heard legal advice during the June 2022 meeting, but it already had decided to convert the Bank when it adopted the July 2021 Strategic Plan less than six weeks after the chancery court rejected the 2019 conversion resolution. On that record, the court understandably was not persuaded by the directors' advice-of-counsel defense.

B.

In their cross-appeal, defendants argue the chancery court erred in rejecting their counsel-fee application and in not addressing the indemnification claim set forth in the fourth count of the third-party complaint.

Defendants contend they are entitled to a counsel-fee award because the Bank named them as defendants "as representatives of all members" and because

16

they acted derivatively in bringing third-party claims they say benefited the Bank and its members. We are not persuaded by that argument.

"[T]he American rule requires that litigants 'bear the cost of their own legal representation' by prohibiting 'recovery of counsel fees by the prevailing party against the losing party.'" In re A.D., 259 N.J. 337, 351 (2024) (quoting Boyle v. Huff, 257 N.J. 468, 479 n.1 (2024)). However, New Jersey courts under fact-specific circumstances have awarded counsel fees in shareholder derivative cases under Rule 4:42-9(a)(2)'s "fund in court" exception to the American Rule. See, e.g., Sarner v. Sarner, 38 N.J. 463, 467-69 (1962); Trimarco v. Trimarco, 396 N.J. Super. 207, 215-16 (App. Div. 2007).

"[A] shareholder derivative action permits a shareholder to bring suit against wrongdoers on behalf of the corporation, and it forces those wrongdoers to compensate the corporation for the injury they have caused." In re PSE & G S'holder Litig., 173 N.J. 258, 277 (2002). "[T]he cause of action actually belongs to the corporation, but a shareholder is permitted to assert the cause of action where the corporation has failed to take action for itself." Id. at 278. To maintain a derivative action, the shareholder must "fairly represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." R. 4:32-3. A direct action involves a "special

injury" suffered by a particular shareholder. Delray Holding, LLC v. Sofia Design & Dev. at S. Brunswick, LLC, 439 N.J. Super. 502, 510 (App. Div. 2015); see also Tully v. Mirz, 457 N.J. Super. 114, 124 (App. Div. 2018) (finding "a direct action is one in which liability is based upon an injury . . . to a particular shareholder"). A claim of entrenchment can state "either a direct or derivative claim, depending on whether the entrenchment affects shareholders unequally." Strasenburgh v. Straubmuller, 146 N.J. 527, 552 (1996).

In Seidman VII, we noted the chancery court concluded Seidman and Wein had not brought their action challenging the 2019 conversion resolution derivatively and on reconsideration denied their counsel-fee application. Slip op. at 24. "The court found plaintiffs' injuries were unique because they were seeking positions on the Board, something that the entirety of the Bank's membership was not seeking to do." Ibid. The court also "found plaintiffs were motivated by self-interest and that their allegations concerned an impingement upon their right to vote their 'shares' in a way to become Board members." Ibid. We affirmed, rejecting Seidman's and Wein's attempt "to analogize this case to the previous lawsuits in these marathon litigations, which were deemed derivative . . . ." Ibid.

A-0546-24

We see no basis to depart from that reasoning. Defendants' challenge in this case to the 2022 conversion resolution is analogous to their prior challenge to the 2019 conversion resolution. In the third-party complaint, defendants referenced the Board's efforts "to stop Seidman, who was . . . viewed as a threat to convert [the Bank] from a mutual to a stock corporation." The court found that in adopting the 2022 conversion resolution, the Board "was again primarily motivated to prevent Seidman and his associates from gaining a position on the Board." As set forth in the complaint, the Bank named Seidman and Wein as defendants not because it viewed them as representatives of its members but because it correctly anticipated they would bring claims challenging the 2022 conversion resolution. On that record, we perceive no error in the court's denial of defendants' counsel-fee application.

Defendants point out the chancery court did not make any findings about the indemnification claim set forth in count four of the third-party complaint. The court did not reference that count in the August 30, 2024 order. In its decision, it stated only that it was dismissing the remainder of the relief sought in the third-party complaint. It did not make any findings about count four or explain why it was dismissing it. "[A]ppellate review is impeded when a trial court fails to 'state its factual findings and conclusions of law on the

record . . . .'"  Parke Bank v. Voorhees Diner Corp., 480 N.J. Super. 254, 266 (App. Div. 2024) (quoting Lakhani v. Patel, 479 N.J. Super. 291, 297-98 (App. Div. 2024)).

The parties urge us to decide the claim.  An appellate court may exercise original jurisdiction "to avoid unnecessary further litigation" when "the record is adequate to terminate the dispute and no further fact[]finding" is necessary and when "a remand would be pointless because the issue to be decided is one of law and implicates a public interest."  State v. Nieves, 476 N.J. Super. 405, 424-25 (App. Div. 2023) (alteration in original) (quoting Vas v. Roberts, 418 N.J. Super. 509, 523-24 (App. Div. 2011)).  Following that standard, we decline to exercise our original jurisdiction to decide count four of the third-party complaint.  Accordingly, we remand the case to the chancery court for resolution of that claim.  In remanding, we take no position on the ultimate outcome.

III.

In sum, we vacate the dismissal of count four of the third-party complaint. We remand the case with instructions the chancery court consider and decide the claim raised in that count and any defenses to it.  We direct the chancery court on remand to conduct a case management conference within thirty days of the date of this opinion to consider how best to proceed in resolving that

remaining aspect of this case. We leave in the court's discretion whether to conduct additional evidentiary hearings on remand. We otherwise affirm the August 30, 2024 order. Perceiving no abuse of discretion in the denial of the reconsideration motion, we affirm the October 15, 2024 order.

Affirmed in part; vacated in part; and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division